No. 84-513

IN THE SUPREME COURT OF THE STATE OF MONTANA

1985

_____

STATE OF MONTANA,

        Plaintiff and Respondent,

-vs-

CLIFFORD EDWARD MONTEITH,

        Defendant and Appellant.

_____

APPEAL FROM:  District Court of the Twentieth Judicial District,
            In and for the County of Lake,
            The Honorable Jack L. Green, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        Christian, McCurdy & Wold, Polson, Montana

    For Respondent:

        Mike Greely, Attorney General, Helena, Montana
        John R. Frederick, County Attorney, Polson,
        Montana

_____

Submitted on Briefs:  April 4, 1985

Decided:  JUN 2 1985

Filed:  JUN 2 1985

*Ethel M. Harrison*

Clerk

Mr. Chief Justice J. A. Turnage delivered the Opinion of the Court.

Defendant appeals the order entered August 13, 1984, in the Fourth Judicial District, Lake County, revoking the suspension of his sentence entered on July 13, 1983. The order reinstated an eight-year sentence with three years suspended based upon the report and testimony of defendant's Montana probation officer on alleged violations of the conditions of suspension of the sentence while defendant was in North Dakota.

We remand for an evidentiary hearing. The record raises the question of whether defendant was afforded procedural protection due under the interstate compact on the supervision of out-of-state probationers and parolees. Sections 46-23-1101 through 46-23-1106, MCA.

Clifford Edward Monteith entered a plea of guilty to felony theft on June 22, 1983, as part of a negotiated plea agreement. He had "hot wired" a 1979 Ford pickup truck from a car lot on April 30, 1983, placed a false temporary sticker in the window, and used the truck. From a tip, the authorities located the truck in the area and issued a warrant for his arrest on May 2, 1983. He was arrested in Las Vegas on May 18, 1983. This was Monteith's first felony offense, but he had a history of lesser crimes involving mischief, alcohol and drugs. Although he had been confined in jails and treatment programs, he had never been to prison.

Monteith's probation officer, Ron Alsbury, recommended a suspended ten-year sentence conditional upon completion of ninety days served in the Lake County jail, no drinking, "alcohol counseling as deemed appropriate by probation officer," payment of attorney fees and restitution. Alsbury also

2

recommended (as Monteith wished) that the defendant return to his residence in North Dakota, seek employment, and have his probation transferred to the State of North Dakota.

Monteith went to North Dakota under the interstate compact on supervision of probation and parole. On October 1, 1983, he was arrested for driving under the influence of alcohol, escape from lawful custody, and no driver's license. He apparently pled guilty pursuant to a plea bargain with the State of North Dakota and agreed to completion of an alcoholism treatment program at the North Dakota State Hospital. He completed the program on December 1, 1983, and was released to his residence.

Alsbury filed a probation violation report March 14, 1984, alleging three rule infractions: (1) Rule #2--defendant changed his residence without obtaining permission from his probation officer; (2) Rule #6--defendant consumed alcoholic beverages; and (3) Rule #13--defendant disobeyed the law as evidenced by his guilty pleas to the misdemeanor offenses.

The Lake County attorney petitioned for a revocation of the suspension of sentence on March 20, 1984, based upon the report of violations submitted by Alsbury. Monteith first reappeared in District Court in Lake County on July 25, 1984, following arrest on a warrant filed March 21, 1984, on charges of violating conditions of probation and absconding from probation supervision. He said he had three hearings in North Dakota, but counsel offered no evidence as to the nature of the proceedings.

At the second hearing in Lake County on August 1, 1984, Monteith under questioning from the court denied the allegation that he had changed his residence. He claimed that he

3

had been living at his residence in North Dakota and that he called the probation officer about five times, but he was not in twice and too busy to talk three times. He admitted to consuming intoxicants but denied through counsel "at this time" the allegation that he had disobeyed the law as represented by his guilty plea. The court referred the case to the original sentencing judge because of defendant's denial of the allegations.

On August 8, 1984, the sentencing judge called probation officer Alsbury who under cross-examination admitted knowledge of a plea bargain in North Dakota, Monteith's completion of the alcohol treatment program and no further record of trouble with alcohol or the law. Alsbury indicated that the State of North Dakota represented to Monteith that there would be no recommendation of violation if he met the conditions of the plea bargain. Monteith was charged with violation of Rule #2 relating to change of residence without permission; however, Alsbury in testimony apparently recommended revocation of the suspended sentence for violation of a duty to report to the North Dakota probation officer, a violation that Monteith was not charged with. Either alleged violation occurred after the October incident.

The court, noting defendant's denial of violation of Rule #2 which "provides that you shall not change your place of residence without first obtaining permission from your supervising officer" (i.e., absconding from probation supervision), however, based the revocation on the admissions to violations of Rules #6 and #13 at the hearing August 8, 1984. Yet the probation officer testified that he had violated "the duty to report," not changing residence as claimed in the report. The court order revoking the suspension of sentence

4

found that defendant had violated "the conditions of his probation as alleged in the report of violation prepared and filed by his probation officer herein."

We consider the following issues raised by appellant:

1. Did failure to provide a preliminary on-site hearing in North Dakota violate defendant's Fourteenth Amendment right to due process?

2. Did the North Dakota plea bargain involve the consent of Montana authorities, thus binding Montana to waive violations of Rules #6 and #13, consuming alcohol and disobeying the laws, as cause for revocation?

3. Did sufficient evidence support the revocation of defendant's suspended sentence?

Issue No. 1: <u>Failure to provide on-site hearing</u>. The State contends that § 46-23-1102(3), MCA, applied here and allowed Montana to retake the defendant upon its own initiative without formality; all legal requirements for extradition were expressly waived by the statute, provided that no criminal charges or suspected offenses were pending in North Dakota. The State further contends that defendant was afforded due process in excess of the provision in that North Dakota provided him an extradition hearing. (The District Court in Lake County did not have a transcript record of the three hearings in North Dakota when revoking the sentence.) Defendant, the State claims, did not demonstrate any North Dakota involvement in the decision to retake the defendant to Montana.

Appellant's position is that § 46-23-1103, MCA, applies where a probationer is supervised pursuant to the interstate compact and the supervising state believes that the sending state should consider retaking or reincarcerating for a

5

probation violation. The statute provides that before the supervising state initiates a retaking by notifying the compact administrator, it must hold a hearing in accordance with the act within a reasonable time unless the hearing is waived. The probationer has the right at this hearing to notice in writing of the allegations and the purpose to determine probable cause for revocation; opportunity before the hearing to get assistance; right to confront and examine those making allegations; and opportunity to admit, deny or explain and offer proof of contentions. Section 46-23-1105, MCA. At the end of the hearing the appropriate officers shall report to the sending state, furnish a copy of the hearing record and recommend a disposition. (The three hearings in North Dakota, of which the District Court in Lake County had no transcript, involved extradition and not an opportunity to know or counter any allegations.)

The record before the District Court failed to indicate whether Montana or North Dakota initiated the retaking of defendant. The court, however, had notice that the violations occurred in North Dakota with the knowledge of a North Dakota probation officer. The Montana probation officer left unclear in his report, upon which the court based its order, whether or not the retaking was at the recommendation of North Dakota.

Based upon this record, we cannot reach the issue of whether defendant's Fourteenth Amendment right to due process was violated by a failure to provide an on-site hearing in North Dakota pursuant to Fisher v. Crist (1979), 182 Mont. 124, 594 P.2d 1140, and Morrissey v. Brewer (1972), 408 U. S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484. At the evidentiary hearing, the District Court should be presented with a better

record on what compliance there was with the provisions for interstate supervision of probationers and parolees. Sections 46-23-1101 through 46-23-1106, MCA.

Issue No. 2: <u>Effect</u> <u>of</u> <u>out-of-state</u> <u>plea</u> <u>bargain</u>. The court ordered the revocation based upon the offenses subject to a guilty plea as sufficient despite denial of the violation of failure to report (or changing residence, without permission, whichever the State is claiming). Through Alsbury's testimony, the court had notice of a guilty plea as part of a plea bargain. The court also had notice from testimony of probation officer Alsbury that Monteith had been party to some form of bargain relating to his North Dakota pleas which may have been a plea bargain consented to by Montana authorities.

There was no record of the North Dakota plea bargain other than testimony which does not adequately clarify what occurred. The court found by defendant's admissions to the underlying offenses that he had violated the terms and conditions of his probation. On remand, the court should consider evidence on the plea bargain to determine its existence and details, including possible agreement of Montana authorities to its terms. If the North Dakota offenses are the basis for the revocation and have not been, by plea bargain, waived by Montana authorities as cause for revocation, the record should more accurately and completely document the charges and the disposition.

Issue No. 3: <u>Sufficient</u> <u>evidence</u> <u>to</u> <u>support</u> <u>revocation</u>. Alsbury, the probation officer, recommended revocation not based upon the offenses involved in a guilty plea in October 1983 but upon either the failure to report or changing residence without permission from the supervising

7

officer. The court, however, found that the October offenses supported revocation, based upon defendant's admissions to the violations.

Although the admissions would support revocation, there remain unresolved issues of fact which may affect the decision:

(1) Did the State of North Dakota notify Montana to retake the defendant?

(2) What procedures did the State of Montana follow to retake the defendant under the interstate compact on supervision of probationers, §§ 46-23-1101 through 46-23-1106, MCA?

(3) Did the probation officials in Montana agree to honor a successful completion of the terms of a guilty plea in North Dakota through the interstate compact?

Remanded for an evidentiary hearing.

_____
Chief Justice

We concur:

_____

_____

_____

_____
Justices